**Robert C. SHEPPARD,**
**Petitioner–Appellant,**

v.

**STATE OF LOUISIANA BOARD OF PAROLE, et al.,**
**Respondents–Appellees.**

No. 88–3888
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 27, 1989.

Robert C. Sheppard, Homer, La., for petitioner-appellant.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:

Robert C. Sheppard's notice of appeal has been construed as a request for a certificate of probable cause. *See* Fed.R.App. P. 22(b). We GRANT certification, affirm in part, and vacate and remand in part.

According to the allegations in his pleadings, Sheppard was released on parole in 1982. At that time, he was ordered to pay $43 per month in parole supervision fees. He complied in part with this requirement, paying a total of $1,386, before his parole was revoked, in part for failure fully to comply with the fee requirement.

Sheppard filed this suit as a civil rights complaint under 42 U.S.C. § 1983. He sought a declaration that the statute authorizing payment of parole supervision fees was applied to him in violation of the ex post facto clause of the constitution. He also sought monetary damages. The district court dismissed the case without prejudice. It held that, to the extent Sheppard's allegations challenged his present confinement, they should be pursued in habeas corpus proceedings, with the concomitant exhaustion of state remedies. It further held that Sheppard's civil rights allegations were premature and must await adjudication of his habeas corpus claims.

In *Murray v. Phelps,* No. 88–3302 (5th Cir. Feb. 3, 1989) 867 F.2d 1426 (table) (unpublished), a copy of which we append to this order, this Court remanded a civil rights suit to the district court for a determination whether Louisiana's parole supervision fees were applied to appellant Murray in violation of the ex post facto clause. In that case, we noted that Murray's present confinement was not due to a violation of that parole condition. *Murray,* slip p. 2 n. 1. Sheppard's case differs from Murray's in a critical way. Sheppard's parole was revoked, at least in part, for failure to pay the supervision fees. Although Sheppard does not seek release from prison, a determination that the fees were improper would necessarily undermine the validity of his parole revocation proceeding.

In *Serio v. Members of Louisiana State Board of Pardons,* 821 F.2d 1112, 1117–19 (5th Cir.1987), we reiterated that, where a prisoner's civil rights allegations impinge in part on the validity of his current confinement, he must initially seek relief through habeas corpus proceedings. The district court in this case correctly determined that Sheppard's allegations concerning the parole supervision fees must first be pursued under habeas corpus, with exhaustion of state remedies. The district court also correctly noted that, under *Serio,* Sheppard's civil rights allegations were premature. However, the district court did not make a determination that dismissal without prejudice would not adversely affect those civil rights claims. *See id.* at 1120–21. In view of Louisiana's one-year prescriptive period for civil rights claims, *see Freeze v. Griffith,* 849 F.2d 172, 175 (5th Cir.1988), the current dismissal, even without prejudice, might preclude a later civil rights action.

Accordingly, we affirm the dismissal without prejudice of Sheppard's habeas corpus claims. We vacate and remand the dismissal of his civil rights claims for a determination whether they should be dismissed without prejudice or stayed pending exhaustion of habeas corpus remedies.

**CERTIFICATE OF PROBABLE CAUSE GRANTED AFFIRMED IN PART, VACATED AND REMANDED IN PART**

### APPENDIX I

In the United States Court of Appeals for the Fifth Circuit

Robert H. Murray, Plaintiff–Appellant,

v.

C. Paul Phelps, Secretary, Department of Corrections, et al., Defendants–Appellees.

No. 88–3302

Summary Calendar

February 3, 1989

Appeal from the United States District Court for the Middle District of Louisiana (CA–88–129–A)

Before POLITZ, KING and SMITH, Circuit Judges.

PER CURIAM: *

#### I.

Plaintiff–Appellant Robert Murray ("Murray") filed this § 1983 action, pro se, in the Federal District Court for the Middle District of Louisiana. Murray alleged that the imposition of "supervision fees" as a condition of his parole, pursuant to Louisiana Revised Statutes Annotated § 15:574.4(H)(15), violated the ex post facto clause of the Constitution. Plaintiff contends that application of that condition to his parole was a retroactive change in the punishment for his offense which was committed in 1976, five years before the imposition of supervision fees as a condition of parole was first authorized by Louisiana State Legislature.[1]

---

* Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

1. Plaintiff's complaint is properly captioned as an action under 42 U.S.C. § 1983 rather than as a petition for habeas corpus because the revoca-

This case was referred to a United States Magistrate for a recommendation regarding the merits of plaintiff's claims. The magistrate recommended that the complaint be dismissed as frivolous. The district court adopted the report of the magistrate, dismissed plaintiff's complaint as frivolous, and denied leave to appeal in forma pauperis.

We do not agree that plaintiff's claims are frivolous. Accordingly, plaintiff's motion to proceed in forma pauperis is granted, the judgment of the district court is reversed and the case is remanded for further proceedings.

## II.

The magistrate's report characterizes the plaintiff's complaint as alleging only a wrongful deprivation of property and states that under the principles set forth in *Parratt v. Taylor*, 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981), and *Hudson v. Palmer*, 468 U.S. 517 [104 S.Ct. 3194, 82 L.Ed.2d 393] (1984), there can be no violation of due process because plaintiff has an adequate remedy in state law. This rationale does not justify the dismissal of Murray's complaint.

First, it is questionable whether plaintiff's complaint even alleges a deprivation of property without due process.[2] Rather, the crux of plaintiff's complaint is that the Board of Paroles violated the ex post facto clause, U.S. Const. art. I, § 10, cl. 1, by applying a statute that authorized the imposition of supervision fees as a condition of parole to persons whose offenses were committed prior to the effective date of the Act. Neither the magistrate's report nor the district court's minute order addresses this issue.

Second, *Parratt* and *Hudson*, taken together, hold that where a § 1983 plaintiff alleges that he has been deprived of his property, without due process of law, by

the negligent or intentional actions of a state officer that are *"random and unauthorized,"* a tort cause of action in state law is sufficient to satisfy the requirements of due process. *Hudson*, 468 U.S. at 533–35 [104 S.Ct. at 3203–05] (because a pre-deprivation hearing is not possible in such cases, a post-deprivation hearing is sufficient and state common law causes of action may meet this requirement); *see also Marshall v. Norwood*, 741 F.2d 761 (5th Cir.1984).

To the extent that plaintiff's complaint can be characterized as alleging a deprivation of property without due process, the state action here cannot be construed as "random and unauthorized." Plaintiff's contention that the state officials misconstrued the Act to apply to him could be read to allege an intentional but "unauthorized" action within the meaning of *Hudson*, 468 U.S. at 533 [104 S.Ct. at 3203]. This contention appears, however, to be erroneous. Plaintiff asserts that section 15:574.4(H)(15) applies by its plain terms only to offenses committed on or after the effective date of the Act—July 1, 1982. This provision, however, is contained in Act 762 which amended only subsection A of section 15:574.4, relating to parole eligibility. 1981 La.Sess. Law Serv. 762 (West). Act 294, not Act 762, amended subsection H which is at issue here. Act 294 does not contain a similar provision limiting the application of the Act to offenses committed on or after the effective date of the Act. *Id.*

Thus, as the Legal Counsel of the Department of Corrections noted in response to Murray's inquiries, the Act applies to anyone who *received his parole* on or after the effective date of the Act. The imposition of supervision fees as a condition of plaintiff's parole was authorized by section 15:574.4. Therefore, *Parratt* and *Hudson* do not bar Murray's due process claim be-

tion of his parole in 1987 was not based upon a violation of the condition of parole that he challenges here. Plaintiff does not allege that his present imprisonment is wrongful. Rather, he seeks reimbursement of the supervision fees that he paid between June of 1984 and March of 1987 and other damages.

**2.** On appeal, plaintiff mentions procedural due process only in his "Statement Regarding Oral Argument" and not in the body of his brief.

cause any deprivation of property that plaintiff suffered was "a result of [an] established state procedure." *Hudson,* 468 U.S. at 532 [104 S.Ct. at 3203].

However, because the imposition of supervision fees *was* authorized, Murray could establish a violation of procedural due process only if he could show that the parole board failed to provide or follow adequate procedures in imposing the condition in his case. Murray, however, makes no such allegation. Rather, his complaint is more accurately read as challenging the constitutionality, under the ex post facto clause, of the statute that *authorized* the imposition of supervision fees as a condition of parole.

This issue was not addressed in the magistrate's report or by the district court. We do not think that the ex post facto clause claim is frivolous[3] and remand this case to the district court for determination of that issue.

Specifically, the district court should determine whether the statutory authorization of conditions that may be imposed on parolees, like statutory conditions of parole *eligibility,* are a part of the punishment of a crime. *See Warden v. Marrero,* 417 U.S. 653, 662–63 [94 S.Ct. 2532, 2537–38, 41 L.Ed.2d 383] (1974) (citing *Durant v. United States,* 410 F.2d 687 [689], 691 (5th [1st] Cir.1969)). While we express no opinion as to the merits of plaintiff's claim, we note that this case may raise novel constitutional issues.

In *Weaver v. Graham,* the Supreme Court stated that a statute may be considered retrospective "even if it alters punitive conditions outside the sentence itself." 450 U.S. 24, 32 [101 S.Ct. 960, 966, 67 L.Ed.2d 17] (1980) [1981]. A condition of parole could be construed as a punitive condition—that is, as a "legal consequence" attaching to the commission of a

crime—in two different respects. First, a condition of parole *could* affect the length of sentence if the condition was so onerous that it was effectively impossible to meet.[4] Arguably, the condition at issue here could be saved from such an objection because the statute provides that the required payment will be determined with regard to the parolee's ability to pay.

Second, because the ex post facto clause does not apply only to sentence length, but to any *punishment,* a monetary payment—whether labeled as payment of supervision costs, as restitution, or as a fine—that flows from the commission of the underlying crime, rather than from some subsequent act of the parolee, *could* be construed as a part of the punishment of that crime because the payment is a condition of the parolee's continuing release from prison.

Assuming *arguendo* that a condition of parole is a "punitive condition," the retroactive imposition of new conditions could violate the ex post facto clause. Murray argues, for example, that when he was convicted of his offense in 1976, section 15:574.4(H) did not authorize the imposition of supervision fees as a condition of parole. Thus, while he would expect to be eligible for parole at the time provided by statute and would expect his parole to be subject to various conditions authorized by the statute, the possibility that he would be required to pay supervision fees as a condition of parole was not a part of the punishment imposed on him in 1976. Arguably, then, application of the 1981 Act to persons receiving parole on or after July 1, 1982, "changes the legal consequences of acts completed before [the] effective date" of the Act. *Miller v. Florida,* [482 U.S. 423] 107 S.Ct. 2446, 2453–54, 96 L.Ed.[2d] 351, 360 (1987); *Weaver,* 450 U.S. at 31 [101 S.Ct. at 965].

**3.** Although Murray's contention that the Act does not, by its terms, apply to offenses committed before July 1, 1982, is erroneous, the fact that the Act *does* apply to persons who committed their offenses before the effective date of the Act, raises a colorable constitutional claim.

**4.** We note that few parole conditions other than required fees or payments would be susceptible to this analysis. Conditions regulating the parolee's *conduct* would probably be considered analogous to recidivist statutes which have not been found to violate the ex post facto clause. *See Gryger v. Burke,* 334 U.S. 728, 732 [68 S.Ct. 1256, 1258, 92 L.Ed. 1683] (1948).

While the conditions of parole are largely within the discretion of the parole board, this case could plausibly be distinguished from the federal parole guideline cases discussed in *Miller* [482 U.S. at 433–34], 107 S.Ct. at 2451, 96 L.Ed.[2d] at 362–63. Some courts held that the guidelines were not "laws" within the meaning of the ex post facto clause. Here, we are clearly dealing with a specific legislative enactment rather than guidelines adopted by an agency. Second, and more importantly, some courts found that because the prior system of determining parole eligibility had been almost entirely discretionary, the adoption of "procedural guideposts" for the exercise of that discretion was not necessarily detrimental to prisoners and therefore did not violate the ex post facto clause. *See Yamamoto v. United States Parole Comm'n*, 794 F.2d 1295 (8th Cir.1986). In this case, however, the legislature did not simply adopt guidelines to rationalize the parole board's exercise of discretion. Rather, they expressly authorized the imposition of a condition that had not previously existed.

Thus, it could be argued that this case more closely resembles *Weaver*, in which the Supreme Court held that Florida could not apply retroactively a statute which altered (and made more difficult) the conditions under which prisoners could earn credits towards early release for good conduct. 450 U.S. at 35–36 [101 S.Ct. at 967–68] (statute reduced automatic good-time credits while enhancing opportunities to earn credits at discretion of prison authorities).

We have outlined some of the issues raised by Murray's complaint to provide some guidance to the district court on remand. We intimate no opinion regarding the merits of Murray's complaint.

### III.

For the foregoing reasons, in forma pauperis status is granted, the judgment of the district court is REVERSED and the case REMANDED for further proceedings.